# Case No. 2,617.

## The CHARLES HENRY.

[1 Ben. 8.] [1]

District Court, E. D. New York. Oct., 1865.

PRINCIPLE OF SALVAGE—DERELICT—DISTRIBUTION —PASSENGERS — LIBELS BY DIFFERENT SALVORS —COSTS—COUNSEL FEE.

1. Where a vessel fell in, off Cape Henlopen, with a wreck, which, on being boarded, proved to be a derelict, and the master put on board her a crew, consisting of his mate and cook and two men, who were being carried to New York at

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

the expense of the owner of the salving vessel, who brought her in safety to New York, the value of the vessel and cargo being $3,700. *Held*, that the spirit of the rule which governs salvage awards, requires that while they should not be extravagant, they should always be generous.

2. That the rule in cases of derelict is to award a moiety, the burden being on the claimant to show that a different measure should be applied.

[Cited in The W. D. B., Case No. 17,306.] [See note to The Cayenne, Case No. 2,532.]

3. That the rule allowing compensation to the owners of the salving vessel is too firmly established to be shaken, and the habit of courts of admiralty is to award them a third.

4. That the responsibility thrown upon the master and his rank are to be considered in fixing the share to be paid to him.

5. That a passenger who was bold in advising the master to attempt the service, and active in helping to perform it, was entitled to an increased share on that account.

6. That passengers who refused to volunteer to assist when solicited, are not entitled to share in the award.

7. That there should be but one libel filed in ordinary salvage cases, and costs paid for but one.

8. That part of the costs might be paid out of the remaining share of the proceeds, but that there were no circumstances which called for an award of a counsel fee.

9. Ordered that the clerk's and proctor's fees be first paid out of the fund, and that half the remainder be divided into twenty-one shares, of which the owners were to have seven, the master five, and the passenger three. The remainder to be divided among the crew and the other passenger according to their wages. The passenger to rank with the mate. Marshal's fees and commissioner's costs to be paid out of the remaining proceeds.

In admiralty. The libel in this case was filed by John C. Rahming, the owner, and the master and crew of the schooner Georgiana, in behalf of themselves and all others interested against the schooner Charles Henry and her cargo, to recover salvage. The Charles Henry as well as her cargo was seized, under process, issued according to the prayer of the libel, and thereafter John Dempster Cousins, who was a passenger upon the Georgiana, not fully satisfied with the presentation of the case as made in the libel of the owner, appeared by his own proctor, and asked and obtained from the court leave to set forth his services and demands with more particularity in a supplemental allegation. Subsequently, Dominick Buckley, another of the passengers upon the Georgiana, filed a libel, setting forth his services in effecting the salvage, and process was issued in his behalf. Subsequently, by order of the court, the two causes were consolidated. No one appearing on the part of the Charles Henry or her cargo upon the return of the process, it was accordingly adjudged that the schooner and her cargo be condemned to pay salvage, and a reference was ordered to a commissioner, to take such testimony as the respective parties appearing might offer in support of their allegations, and report the same to the court.

Upon the coming in of the testimony taken before the commissioner, the various libellants appeared before the court, by their respective advocates, and presented their views upon the question of the amount of salvage to be awarded, and its distribution among the salvors.

There was little or no dispute as to the circumstances attending the saving of the vessel proceeded against, or the part taken by the parties who claimed to be the salvors. The proofs showed that about midday on the 24th of August last, when the Georgiana, bound to New York, was about thirty miles from Cape Henlopen, a wreck was descried, lying in her course. Upon coming up with it, the libellant, Cousins, proposed that it be boarded, and overcoming some slight objection on the part of the master, on account of the sea running, went into the stern boat, which was lowered, and with the master, the cook and two seamen, proceeded to the wreck. It proved to be the schooner Charles Henry, laden with coal, water-logged and abandoned. She was found to be in great disorder, full of water, with one pump choked, and the sea making a clean breach over her. She was, in fact, a derelict in a sinking condition, and, in the opinion of some of the witnesses, would have gone down within six hours if no aid had been afforded her. After trying the pumps, it was determined, upon a consultation between the master and Cousins, to make an effort to free her, and bring her into port. The effort proved successful. By active pumping she was freed from water, and sails were set. A crew, consisting of the mate of the Georgiana, two passengers, Cousins and Buckley, and the cook, were put in charge, with orders to follow the Georgiana, which latter vessel, by slackening sail, kept her in sight, and led the way, until, after the expiration of two days and eight hours, both vessels arrived safely in the port of New York. The value of the Charles Henry and cargo amounted to about $3,700.

Benedict, Burr, & Benedict, for libellant Rahming.

Charles Edwards, for libellant Cousins.

J. J. Rogers, for libellant Buckley.

BENEDICT, District Judge. The facts of this case presents all the elements of a salvage service as frequently declared in courts of admiralty, and entitle the libellants to be rewarded as salvors according to the settled rule of the maritime law. This rule rests upon an enlarged view of public policy, and declares it to be for the interests of commerce, that when property at sea, and in danger, is saved by exertions voluntarily rendered, a suitable reward for such exertions should be given out of the property saved. It is for the safety and interest of commerce that this rule be always enforced in the liberal spirit which originated it, to the end that whenever disaster occurs upon the sea, all persons having opportunity to afford relief, shall feel assured that efforts expended in behalf of property in peril, if shown in a court of admiralty, will not fail to bring returns more advantageous to the salvors, than can be obtained by plunder of wrecks; and that time expended in salvage services, receives more ample reward than the ordinary recompense of freight or charter money. The spirit of the rule requires that salvage awards, while they should not be extravagant, should always be generous.

These considerations are not new. They have long been acted upon by foreign, as well as American courts of admiralty; and by merchants and underwriters in many cases, never brought before the courts. Indeed, I think it might be added that the merchants have generally applied the rule of the maritime law with a generosity more liberal than that sometimes exhibited by the courts.

The facts attending the saving of this wreck do not require at my hands any extended examination to enable me to determine the amount of salvage to be decreed. It is a case of a derelict, and no one appears as claimant. I content myself with adopting the language of Judge Story in the case of Rowe v. The Brig [Case No. 12,093]: "In cases of derelict, the old rule should still be considered as a subsisting but flexible rule, that, prima facie, the salvors are entitled to a moiety; and it is incumbent on the claimant to establish that, under the special circumstances of the case, a different measure ought to be applied."

I therefore award to these salvors one half the proceeds of this vessel and cargo, as their salvage reward in this case; and as the value of the property is not great, and no one has appeared to claim it and avoid the expense of the proceedings by payment or tender, and inasmuch as the expenses of the custody and storage of the cargo and of taking proof of the facts have been considerable, I shall direct that the proctor's and clerk's costs only, be deducted from the gross proceeds, and that the marshal's and commissioner's fees be paid out of the proceeds remaining, after payment of the salvage as awarded. It was urged upon the argument, that a counsel fee should also be awarded out of the fund, if not to each advocate, at least to the one originating the proceedings; but I see nothing in the case to call for such additional allowance.

There remains to determine in what proportions the salvage shall be distributed among the salvors. Upon this question it has been urged in behalf of the passengers, that the owner of the Georgiana should receive but a small, if any, part of the award, inasmuch as he did not personally partake of the risk or share in the labor. But I

cannot give to this proposition my assent. Were such a doctrine established, it would defeat the object of the law; for let owners understand that they derive no benefit from the performing of salvage services by their vessels, and orders to their masters to avoid rendering the services will soon follow.

The contrary rule is too firmly established to be now shaken. Courts of admiralty in all cases not only give consideration to the claim of an owner to participate in salvage awarded, but in the distribution give him a liberal share. As to what this share should be, while there is no rigid rule, there is in the court of admiralty a well established "habit."

In ordinary cases, the habit of the court is to give to the owners one-third of the amount —The Henry Ewbank [Case No. 6,376],—and no reason is seen for deviating from the rule in the present case. One-third of the salvage awarded will accordingly be paid to the owner of the Georgiana. The claim of the master of the Georgiana, Captain Foster, stands next in rank. The proof shows that the salvage service in question was performed under the immediate orders and superintendence of the master. He boarded the wreck, and directed the labor of preparing it for a successful voyage to a port of safety. He detailed his chief mate to navigate the wreck, and was thereby compelled to take upon himself double duty on his own vessel. He kept the wreck in sight until it was anchored in New York. The responsibility of the adventure from beginning to the end was upon him, and to this element in his case I give much consideration. As a class, the masters of our commercial vessels receive no extravagant compensation, while they are compelled to assume great responsibilities, and the full weight of this responsibility they are often made to feel when a voyage or adventure, although undertaken and conducted according to their best judgment, under the circumstances, proves in the end disadvantageous to the owner. I consider, therefore, not only the labor of this master, but his rank and responsibility, in fixing the portion to be given him, and shall give him a liberal reward. There remain the claims of the passengers and crew. It appears from the proofs, that the Georgiana had on board, in addition to her crew, six persons who were in the employ of the owner, and were being transported by him to New York at his expense. Two of these, Cousins and Buckley, formed part of the crew which navigated the wreck into port. On the part of Cousins, it is insisted that he is entitled to an original and liberal portion beyond that of any person composing that crew. I have examined the evidence touching the services of this libellant with care, but do not find that it discloses any extraordinary labor performed by him. So far as navigating the vessel into port is concerned, all on board shared in the labor alike, and little weight can be given to the fact that he

helped to lower the stern boat, or was first on the deck of the schooner. Nor was any especial skill as a navigator at any time displayed or required on the part of this passenger. It is, however, shown that he had acted as chief mate on other vessels, and his counsel was sought by the master of the Georgiana, as to undertaking to save the schooner. He boldly urged action, and sustained his advice by taking the lead under the master, in the measures adopted to effect the salvage. A timorous opinion expressed by him, or less vigorous action on his part, might have led the master to avoid taking the responsibility of attempting to get the vessel into port, and for this reason a larger portion should be awarded to this passenger than can be claimed by the passenger Buckley, or even the mate. Cousins and Buckley were the only persons out of six passengers who took any part in effecting the salvage. The boat returned from the wreck for volunteers to form a crew, and none of the passengers would volunteer but Buckley. Because of their refusal to volunteer when solicited, I refuse these persons any portion of the reward. The Baltimore, 2 Dod. 132. The remainder of the salvage is to be distributed among the crew of the Georgiana. Buckley, however, should be included, and rank with the mate. I should refuse all costs of his libel to Buckley if there were not some special circumstances which justified an additional libel in his behalf. In ordinary cases, but one libel should be filed, and costs allowed for but one.

Let, therefore, the clerk's and proctor's costs, when taxed, be first paid out of the proceeds in court, and one-half the remainder be divided into twenty-one equal shares. Let the owner have seven shares. Let the master, Foster, have five shares. Let Cousins, the passenger, have three shares; and let the remaining six shares be divided among the crew, including Buckley, making six in all, according to their respective rates of wages as proven. Buckley to be rated with the mate, and the crippled sailor, who was upon the articles at nominal wages, to be rated at $10 per month. And let the costs of the marshal and the commissioner's fees, when taxed, be paid out of the remaining proceeds.